Oh, and she's not representing Hartman? No. Oh, okay. All right, thank you. Perhaps it makes sense, since you've asked me Hartman questions, I could sit down, allow Mr. Hartman's attorneys to speak, and then get up and rebuttal to that. All right, yeah. I thought they were both consolidated. Okay, so now we call Hartman. All right. Okay, we thought they were consolidated. Okay, what do you think we ought to do? I think she's already said what she had to say. Let's hear from Hartman. Okay, let's hear from the attorney. Good morning, Your Honor. Good morning. Catherine D'Amavandi, may it please the Court, representing Thomas Carroll, David Pierce, and Paul Howard, who were the state defendants, now state appellees. Oh, good, we now have the state. Yes. Okay, that's fine. Your Honor, I could respond to the Court's concerns about what tests should be applied in this case. I think it's just not enough to get pleadings that are bizarre? No, it would not, because unfortunately there are a lot of pleadings that are bizarre and are dismissed in the screening stage as being a 12b6 claim that there's no possible merit. In fact, in reviewing for this case, I did come across one case from Delaware from 1999, where an inmate claimed that the prison officials had burned pornographic images into his retinas. Clearly, the person is either a very good science fiction writer or has some type of mental disability, but that should not trigger the inquiry for the Court to look into the person's competence. Why not? Because the Court sort of decides that this is really bizarre and it couldn't have happened? Well, the Court's concern should be whether justice is, whether the person's interests are protected. And in this situation, if a court were to inquire each time where there's not an allegation that the person has suffered some type of injury that's plausible, that would cause the District Courts to be overburdened instead of cases that they normally would dismiss would have to reconsider them. That's why it's important to have that, the documentary evidence, the testimonial evidence, or the adjudication of incompetency in order to go forward. We also have to look at the statute that permits the District Court to request counsel. When an indigent does request counsel, it's under Section 1915E1. They all request counsel. I can tell you that. I've read them all. Right, and as this Court has reiterated in Bell v. Pleasantville Housing Authority in August of this year, that the request is whether they may request counsel, not whether they're entitled to counsel. The other thing that's important for the Court to consider is the nature... Wait, wait, wait, wait, wait. Say that again, please. It's that the Court may request counsel. But when should the Court request counsel? So the Court would look, for the purposes of the 17C inquiry, that would be for the guardian ad litem. For the Tebron factors, that is for appointment of counsel. So when we're talking about the trigger under 17C to protect the incompetence interests, Forelli noted that there might be situations where a litigant does file bizarre claims or might have some erratic behavior. However, they noted that the standard should be that there is some actual documentation of incompetency. So then the second... How do you get that? That would be presented such as a person who has an adjudication below. It is a much higher standard than what the amicus is urging this Court to adopt. And that does also recognize that there is a very real scarcity in counsel who can take these types of cases. Then in looking at the case... But do you agree that in this case, the magistrate judge didn't even look for counsel? Are you referring to Simon's, the Simmons case or the Hartman case? In the Hartman... We can talk about the Powell case. There is an adjudication of incompetency. Or at the... When we look at the record, the special appendix pages 26 through 46, that's the type of documentary evidence that the Court would be looking for in order to make it permissive for the district court to inquire as to the competency of the litigant. Then the next step, which we see applied in the Perry versus Obama case, is that the Court will then make an inquiry as to whether appointing a guardian ad litem would actually protect the indigent or incompetent's interests. And in that case, because the claims were still very bizarre, although there was the adjudication of incompetence, the Court determined that appointing a counsel or guardian ad litem would not protect the person's interests because the claims were still very bizarre. The claims were frivolous. So in looking at the Powell case, although there's the adjudication of incompetence, when they look at the documentary medical evidence with all of the 15 medical appointments, the question becomes, is it going to be wasteful to appoint a guardian ad litem when ultimately, Mr. Powell would not be able to succeed upon his claims? But in Hartman, you have the letter. In Hartman, we have the letter, which is not the type of documentary evidence that the Farrelly Court would... You don't think that that's enough to spark a duty to inquire? It is not for two reasons. First of all, when we apply Rule 17c, the standard is for the incompetency. We have to go back to the state level. And in looking at the Delaware cases on incompetency, the Delaware courts have ruled, for example, in Powers Booth versus Powers Booth, that a person who suffers from major depression, that depression is not sufficient to trigger legal incompetency. And here we have to look at the distinction between a medical professional who is telling the court or advising somebody in a letter that there is some type of mental illness. Mental illness does not automatically equate to legal incompetency. But if you're imploring us to apply Farrelly, then the only standard we need is, is it sufficient for a duty of inquiry? And how would, how's a judge to look at a medical professional's determination as to whether someone's competent versus incompetent? Here, the doctor said incompetent. And how could that not trigger a duty of inquiry? Because it, there is no standard that's listed as to how the medical professional reached that determination. When you look in the special appendix, pages 26 to 46, that is a very detailed report on what tests were used. Here, this is just a mere letter that may have been written at the request of Mr. Hartman saying, please, this is my seventh request for counsel. This could probably get me an attorney to represent my interests. That is, unfortunately, creates such a low standard that the district courts would be flooded with inquiries as to person's incompetence. Because doctors would be irresponsible in providing the letters? No, what the doctor stated is that the doctor is treating this person for major depression and attention deficit disorder. And when we look at what the standard is in Delaware, those do not constitute legal incompetence. So, therefore, that would not be sufficient to trigger the person's competence. Does it have to be legal incompetence? It would. Or isn't it enough that the district judge or the magistrate judge has to figure out whether the person can really handle the litigation? I mean, legal incompetence is a far cry from what the rule may require. Well, for the purposes of 17C, it's a guardian ad litem to represent a person's interests. So that goes back again to the Delaware standard, which is whether a person has the capacity to understand the nature of the claims that are brought against them. And that's a higher standard than what the amicus is urging this court to adopt. Your Honors, I see that my time is up. No, no, that's all right. This is our time. All right. Judge Pollack, you had a question? Does it strike you that there's something odd about supplying a test that's based on state law with respect to whether one is competent to pursue litigation in a federal court? Well, that is what's written into... Under a federal claim. Right. It's under Rule 17B1, and it's also instructive to look at Rule 25, specifically Rule 25B, which is substitution of counsel, that when a party that was originally competent at the start of the litigation becomes incompetent, the court may allow a person's representative to continue with the litigation. And again, it's that permissive word, may, not the sua sponte requirement to do the inquiry. And again, your concern seems to go back to whether or not an individual has a right to pursue every claim. I believe that was brought up in the discussion of the Powell case. And when we look at cases such as Lewis v. Casey, when we're talking about access to the courts and whether a law library is sufficient, the U.S. Supreme Court has held that the person must generally state their claims, but there's really no right to raise every single possible claim that could be brought before the court. So the court, of course, has to strike a delicate balance between persons who want to bring their claims before the court and who are indigent. And so they have to be very mindful not only of the limited resources of the district court below, which would require, unfortunately, a much narrower reading of the inquiry into incompetency. So just to go back as to what test the state appellees would urge this court to adopt, is Farrelly v. River Manor Health Care and the Perry v. Obama case, where the court took a second step and asked whether or not if the court was going to appoint a guardian ad litem, whether that person's interest would be protected in the appointment. And another way of stating it, as the court did, was whether appointment would be futile, whether the claims could actually go forward. So it's important to note what evidence the amicus has shown us, how the outcome would have been different if, for example, further discovery had been conducted, or whether there was depositions or additional discovery. Because in both cases, there's a very clear medical record here that would – and there's also no material issue or dispute of fact. And I think if there was a material dispute of fact, then the court would be more inclined, the district court would be to seek to appoint counsel. So let me ask you this question. Is the mention of the special circumstances language from Smith v. a sufficient reason in and of itself for reversal, since that case has questionable vitality after Tabron? Well, the special circumstances inquiry is one. The other circuits have the exceptional circumstances. So the special circumstances is lower here. Now, in applying the Tabron factors, Mr. Hartman, his circumstances did change by the time he filed his seventh motion for appointment of counsel, in that he was no longer incarcerated. So some of the factors where we're looking at for special circumstances that would normally apply to an incarcerated person are, unfortunately, way against Mr. Hartman. For example, his ability to conduct discovery. While he filed his first six motions for appointment of counsel, he was incarcerated. And that factor, those special circumstances would weigh in his favor, that he is limited in conducting his discovery because of his limited mobility. Now that he's been released in July of 2009, or actually was released in December of 2008, by the time the seventh motion is filed, that factor no longer weighs in his favor. In addition, the ability to seek and pursue counsel, now that he's been released, that also weighs in a different factor as special circumstances than it did when he was incarcerated. Are you not concerned about the fact that all these decisions that you're talking about the court should make are being made without anybody representing the individual, the object of all of this? I'm not sure I understand the concern. Well, the concern is simply that ordinarily in the adversary system, we have counsel for each party. And here you have the judge, or us, just doing all this without anybody representing Mr. Powell, Mr. Hartman, or the myriad other people out there. In responding to that question, a person's interest should always be protected and counsel should always be appointed in either a civil case or a criminal case  So that's where the Sixth Amendment is implicated. That's why courts will routinely appoint counsel when someone is facing criminal charges. Similarly, the district courts have applied that rule in cases where if the outcome of the hearing would require the unrepresented plaintiff to suffer some type of deprivation of their liberty, counsel is appointed. In these cases, these are private rights of actions brought by indigent persons. Yeah, but they're rights that the Constitution gives them because it's the Eighth Amendment. But they're private rights of action for money damages. And the question becomes, should a person... Well, they're not always for money damages, by the way. Sometimes they're for injunctions. But assume money damages. Right. And if that is the standard, then it's creating a difference between a person who is not indigent who can't find counsel to take their case versus an indigent person gets the advantage in the case. I'm not sure I understand. We're talking about incompetency. I'm crazy, so I have an advantage. I apologize. My understanding of the question was just generally looking at indigent cases versus appointed cases and special circumstances. No, my question was, isn't the person entitled to counsel or some kind of representation when a decision is being made that the case is too frivolous to proceed? And what's important there is for there to be some reliable indicia for the district court to first conduct the inquiry into the person's incompetence. What would you put yourself in the role of a district judge, a beleaguered district judge, and there is submitted to the judge a letter or affidavit from a psychiatrist saying this person is not competent to represent himself. What would you have the district judge do at that point? The district judge, first of all, would have to hinge upon the detailed nature of the submission by the medical person. I'm sorry. Like, for example, if there was a certain test that was performed and then this person who is writing the medical document states that I have tested him and he is not able to comprehend the consequences of his actions or the nature of the legal proceedings against him would be one part of it. However, the other part, and that's what applies to this case, is Judge Robinson is very familiar with Mr. Hartman. He's litigated in district court numerous times and he's also filed numerous appeals to the Court of Appeals as well as the state courts in addition. So in looking at Mr. Hartman's legal acumen and legal ability throughout the litigation, which continued even after the summary judgment decision. There'd be no occasion for the district judge to have a hearing at which the psychiatrist would be asked to explain his or her certification. In a perfect world, that would probably be something that the courts may want to gravitate towards. However, the discretion always has to be for the district court. However, recognizing that if the standard is merely a letter from a medical provider, that just would cause the district courts to be overwhelmed in conducting these type of competency hearings. That's what we're concerned about. And that's why the state appellees urged the court to adopt the holding in Forelli, that it is a higher standard, but it has to be some certifiable, verifiable evidence. If there's not going to be an adjudication of legal incompetency, then it would have to be that there is some type of testimonial or documentary evidence from a medical professional that the person is incompetent. The problem is that, and as we know, even in the death penalty cases, that unless there's somebody there fighting for the defendant, in this case the individual, there may be things that just don't get done, don't happen. How do you handle that? Well, that would be the second test that was enunciated in Perry v. Obama, where, as in this case, if the person's interests are unprotected, in looking at whether a guardian... In all of these cases, persons' interests are unprotected. Right. In looking at whether the guardian ad litem would change the outcome of the case, here we have medical evidence showing that this individual received significant medical treatment. Yeah, but we're not talking about this case. I mean, this case may be easy, but we're talking about all those other cases when you're making a rule, and I'm not sure I understand your rule. Right. The rule that's, if I could state it again, is the inquiry that was in Perry v. Obama, is that once a determination has been made, it's adopting what the Ninth Circuit has, it's United States v. 30.64 acres of land, whether the appointment of a guardian ad litem would affect the outcome or protect the interests of the person. So that is the standard. Okay. Thank you. Thank you, Your Honors. I guess, no, we have another counsel. Good morning, Your Honors. Jim Durnick on behalf of the appellee, Ioma Chooks. She was the medical provider in this case. May I please the Court? The Court's been looking for a test this morning. Whom do you represent? Pardon me? Whom do you represent? Ioma Chooks. She was a medical provider for Mr. Murdoch. Oh, I see. Okay. In the prison. I don't think the Court needs a test. I think that what is in place now is just fine. The Court does an initial 1915 review to determine whether there's merit to a complaint. The Court at any moment throughout the pendency of the litigation can sua sponte, seek to appoint counsel for an individual who displays the type of behavior that demonstrates an inability to take care of his own business. In this case, Judge Robinson did exactly what she was supposed to do. She exercised her discretion when she received the three-sentence letter from Mr. Hartman's medical provider. She went back and, as she said, thoroughly reviewed all of his pleadings to determine whether he had competently represented himself. I think contrary to the representation by our friend at Amicus Table, there are no bizarre, there's not the type of bizarre nature to these pleadings that I think Judge Pollack has probably seen in thousands, if not tens of thousands, of pro se petitions that you've reviewed. We get them, too, not only the district court. Well, then Your Honor's familiar with... I've messed them up. Then Your Honor's familiar with the type of pleadings. I've only done this type of work for about five or six years, so I've only seen perhaps 200 or 250 claims come through. And I have to say, frankly, that Mr. Hartman's pleadings rise head and shoulders above 80% of what I see. He's literate. His grammar is correct. His punctuation is correct. He appropriately cites legal authority. His answers to interrogatories may not have responded to the specific questions, but what they amount to is an objection to the interrogatories themselves and the legal process. They amount to an objection that he's being subjected to a legal process without due process, without equal protection. And it's a very cogent argument throughout that document. So I think that Judge Robinson did not abuse her discretion here, and that's really the keystone for the court this morning. I do not think that the concerns that Judge Sloboda has expressed, that there seems to be nobody on the other side to say, with all respect to your calculation, about 80%. Really, this is a plaintiff who ranks far lower than that. It's unfortunate, Your Honor, but that's the nature of our system. The court can't appoint counsel for every single pro se litigant that files a complaint in the federal court. It's just impossible. Well, I don't think that's their point. Isn't their point to take your sentences a step further? It's not that every indigent litigant should have counsel. It's indigent litigants where there's been some finding by a medical professional that they're incompetent. And that's what the Tabron analysis is about. That's where Rule 17 comes into play. My suggestion this morning is the system that is in place, the system that Judge Robinson followed, she got this what Farrelly would call verifiable medical evidence of some incompetence. She didn't simply say it's only three sentences. She doesn't say how long she's been treating him. She doesn't say how these disorders affect him and affect his competence. She took a look at that and said, okay, well, let's see what he's actually filed. Let's look at the pleadings that have come into my court and determine whether he has demonstrated an ability to represent himself or whether his filings, by their very nature, demonstrate that he is not competent to represent himself. Let's change the facts for a moment. So in Powell, there's a court adjudication. Chief Judge Cain came to a determination. In that situation, would you say that's enough for the appointment of counsel? I think it certainly argues stronger. I think at that point there's still – I don't think the judge can just take this piece of paper and accept it and move on to the next step. I think there has to be an examination of the record. So you would adopt your co-counsel's notion that it's some combination of Farrelly and Perry v. Obama? Well, I think what we – yeah, I think that's fair. Okay, so you adopt this duty of inquiry. The situation that we have – Why don't you just say yes? Pardon me? Why don't you just say yes? Because, Your Honor, I'm not sure that – if the court wants a test, then I think that's a good test. I think it's a fine test to say that where you get this verifiable medical evidence, that you then have a duty of inquiry to look further. So a letter from a doctor is not verifiable medical evidence? No, it is. It absolutely is. And Judge Robinson acted on that. Okay. She exercised her discretion and looked at the record to see what the man actually filed to determine whether there was incompetence that affected his ability ably to represent himself. And she determined after looking at that that he had ably represented himself at every turn. He may not have won the motions he filed, I hope it doesn't reflect on me, but I don't win all the motions I file. Mr. Hartman's pleadings go far beyond what we usually see. They're far more indicative of somebody who's able to comprehend and apply the law. And you think it was appropriate for the district judge to look at pleadings in earlier litigation to make a judgment as to whether Mr. Hartman was presently competent? Well, I don't know that Judge Robinson did that, but if she did, that's great. That's going above and beyond. I thought you were making that point in saying that Mr. Hartman was a frequent customer of the court. Your Honor, I think he was, but I think it was counsel for the state who had indicated that Mr. Hartman had appeared in Judge Robinson's court or at least as a litigant in her court numerous times in the past. Okay. Is there anything further from the panel? No, I think that's fine. Thank you very much for your time this morning. Thank you. Okay. Ms. Daly, do you have anything to say that you haven't said before? I do have a couple of things specific to Mr. Hartman that I have not said before. The first is related to Perry v. Obama, which counsel for the state has mentioned as an appropriate test that would preclude Mr. Powell or Mr. Hartman from obtaining counsel because their claims are frivolous. Perry, on its facts, it's an Eastern District of New York case. That was one of the claimants, Your Honor, referenced who was hearing voices from Mars. His allegations were demonstrably bizarre. They did not survive the initial 1915 review. It's not a case like Mr. Powell's where he survives a motion to dismiss or Mr. Hartman's where he survives the initial 1915 review. So that case really is not helpful to the court in deciding whether these people Well, it's helpful to put it on the other side. It's helpful to exclude a very broad category of cases where further inquiry isn't necessary, but it's not helpful for deciding whether or not there was an abuse of discretion in Mr. Powell's case or Mr. Hartman's case because they're simply not like Perry v. Obama. The second point I'd like to make, counsel for the state of Delaware suggested that under Delaware law there's some sort of per se rule that depression can never render someone incapacitated or incompetent, so as to require appointment of counsel under Rule 17. That's simply not the case. If you read the Powers Booth case, the appellate court is looking at the facts below that were presented of an individual's major depression in the context of a divorce proceeding. And the appellate court simply found that there was no abuse of discretion on the evidence in that case in finding that that particular individual was not so depressed, not so mentally ill, that he could not represent himself in that context. It's by no means a per se rule and certainly does not foreclose Mr. Hartman or Mr. Hartman's psychiatrist from saying that his major depression is significant enough that he either needs counsel under Rule 17 or under the discretionary Taboran inquiry that his capacity is compromised and counsel would be appropriate. The last thing I'd say would get to some of Judge Slobodur's concerns about having these cases decided where there's no one on the other side. And Judge Robinson... We'll take Mr. Dernick's argument. He believes that Judge Robinson received evidence of Mr. Hartman's incapacity in the form of the psychiatrist's letter and acted appropriately by evaluating that letter. That is not apparent in the record. What we have is an order where Judge Robinson says, I received new information, here's the letter. And there's no further analysis. And if the court had done that analysis, explained, for example, it's not an affidavit, it's not detailed, I don't know how long Mr. Hartman has been treated by the psychiatrist, that might have been enough, but there's simply nothing there. And that makes Mr. Hartman's case like the Hamilton case where this court reversed a similar situation. It was a Taborn case. The individual had some indications of mental problems. The court found abusive discretion because there was failure to consider the weight of those mental problems. And that's simply what happened here. There was evidence, we don't know how the district court weighed it, that was an abusive discretion. And then briefly on Rule 17. Rule 17, as interpreted by this court in the Gardner case, says that if a litigant is incompetent, or if the litigant is a minor, if that litigant doesn't have an attorney, doesn't have a guardian, doesn't have any representation, the court is without jurisdiction to go ahead  And Gardner looked at the idea. Is it enough if the district court does a searching inquiry of the record? And said it's not enough. Because even a very conscientious district court reviewing the record as thoroughly as possible can't substitute for an adversary. And that's why this court has said in Gardner that it's simply not enough for the court to review the record and say, you know, I'm going to grant summary judgment. The court needs to take some additional protective step. Which are? Well, Gardner leaves it open. In Gardner, they remanded for appointment of a guardian. Rule 17 would also allow, because it allows entry of other appropriate order, appointment of counsel. That's left to the district court. But what the district court cannot do is simply do nothing, grant summary judgment, and say, you know, I looked at the merits and that's enough. There needs to be someone on the other side. And is part of the thrust of your argument that maybe we should be thinking more about the appointment of a guardian ad litem? It's possible. I mean, I think it's in Mr. Hartman's case and Mr. Powell's case, I think the district court can better make the determination of whether a guardian is more appropriate or counsel or both. This court in the past has suggested that, you know, the guardian ad litem could also be the attorney and wear both hats. So that's certainly possible as well. But there needs to be someone protecting Mr. Hartman's interest and Mr. Powell's interest. I have nothing further if you have no further questions. Thank you very much. Thank you very much. I don't think we... Do we want reply? No? Rebuttal? I don't think we'll have rebuttal. Is that all right? Sorry, Your Honor? Yeah, no rebuttal. I think we've heard it. We'll take this matter under advisement. Thank you, Your Honor.